UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROSHONDA R. BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 11-cv-1755 |
| | § | |
| BOARD OF TRUSTEES SEALY | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Doc. No. 30), filed on behalf of the Board of Trustees Sealy Independent School District and Scott Kana.  After considering the motion, the responses thereto, and the applicable law, the Court finds that Defendant's motion must be **PARTIALLY GRANTED and PARTIALLY DENIED**.  Plaintiff may proceed solely on her Title VII and Texas Commission on Human Rights Act claims brought against the Sealy ISD Board of Trustees.

## I.    BACKGROUND

Roshonda Brown ("Plaintiff" or "Brown"), an African American woman, worked as a teacher in the Sealy Independent School District ("Sealy ISD" or "SISD") system for fourteen years.[1]  (Complaint ("Compl."), Doc. No. 25, ¶¶ 1, 26.)  After graduating from college and receiving her teaching certificate, Brown taught math and biology classes for eight years at Sealy High School, her alma mater.  (*Id.* ¶¶ 20, 22.)  In addition to her teaching duties, Brown served

---

[1] The Court relates the facts of this case as alleged in the Complaint.  For purposes of a motion to dismiss, the court must accept plaintiff's well-pleaded factual allegations as true.  FED. R. CIV. P. 12(b)(6); *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (5th Cir. 2007).

as a sponsor for the Sealy High School cheerleading team and as a bus driver.  (*Id.* ¶ 21.)  In 2004, Brown was transferred from Sealy High School to Selman Elementary School, an elementary school within SISD.  (*Id.* ¶ 23.)  At Selman, Brown taught physical education courses and also served as head coach for the Sealy High School cross country and track teams.  (*Id.* ¶¶ 23–24.)  Over the course of her employment, Brown received "positive" and "meets or exceeds expectations" reviews in all categories of professional evaluations.  (*Id.* ¶ 26.)  In 2010, after a total of fourteen years as a teacher in the Sealy ISD system, Brown was terminated.  (*Id.* ¶ 27.)

At some point during her career, Brown began to suffer from attention deficit hyperactive disorder ("ADHD"), which affects her short-term memory and her ability to concentrate.  (*Id.* ¶ 73.)  Brown told Dale Lechler ("Lechler"), her immediate supervisor, about her ADHD and the fact that she was on medication for the condition.  (*Id.* ¶ 84.)  According to the Complaint, the Sealy ISD Board of Trustees ("Board") was aware of Brown's condition through Lechler, who also served as a trustee on the Board, but the Board did not give Brown any lesser sanction apart from termination when her case came ultimately came before the Board.  (*Id.* ¶ 85.)

Brown alleges that she was the subject of a series of suspensions and reprimands that stemmed from a single incident occurring in late 2009.  (*Id.* ¶ 28.)  In December 2009, Brown observed Scott Kana ("Kana"), the assistant superintendent[2] of Sealy ISD, intoxicated at a school function on SISD property.  (*Id.*)  Brown claims she was not the only individual to have observed Kana intoxicated.  (*Id.* ¶ 34.)  Concerned "about the example and appearance that a high level administrator would set for the faculty, employees, and students of [Sealy ISD]," Brown reported what she believed to be Kana's state of intoxication to Pamela Morris, the superintendent at the time.  (*Id.* ¶ 31.)  In the months following her report, Brown became the subject of a series of

---

[2] According to the Complaint, Kana served as assistant superintendent and then as interim superintendent during all periods relevant to the Complaint.  (Compl. ¶ 11.)

disciplinary actions.  (*Id.*)  In total, Brown was the subject of nine different adverse disciplinary actions in the three month period between January and March 2011.[3]

On January 5, 2010, Brown received a municipal court citation for Class C theft under the Texas Penal Code.[4]  (*Id.* ¶ 75.)  On January 14, 2010, Brown received her first written reprimand from Sealy ISD.  (*Id.* ¶ 37.)  The reprimand was for Brown's failure to notify her supervisor of the Class C citation.  (*Id.* ¶ 38.)  On January 29, 2010, Brown received another reprimand directing her to refrain from engaging in further acts of moral turpitude.  (*Id.* ¶ 39.)  On February 10 and February 17, 2010, Brown's immediate supervisor sent her memorandums directing her to report to work every day and to follow established procedures for taking a personal or sick day.  (*Id.* ¶ 40.)  On February 26, 2010, Brown received another written reprimand for failing to fulfill her teaching duties; the reprimand stated that Brown had been absent from her duties for a twenty-five minute period.  (*Id.* ¶ 42.)  Following the reprimand, Brown received a memorandum directing her to avoid further absences and perform her teaching duties.  (*Id.* ¶ 43.)  On the same day, February 26, Brown was suspended with pay and ordered not to report to work until March 1, 2010.  (*Id.* ¶ 45.)

On March 1, 2010, Brown received a second Class C citation for theft.[5]  (*Id.* ¶ 48.)  Brown reported for work on March 2, 2010, and received a suspension based on the citation and Sealy ISD's need to investigate the incident.  (*Id.* ¶ 47.)  After returning from the suspension on March 5, Brown was issued another letter of suspension, this time with pay, on March 8, 2010.

---

[3] The Complaint inexplicably alternates between use of the year 2010 and use of the year 2011.  Because the first temporal reference is to 2010, the Court assumes for purposes of its analysis that Plaintiff intends to reference relevant events occurring in 2010.  For clarity's sake, the recitation of the facts here makes all reference to 2010, even where the Complaint seems to erroneously reference dates in 2011.

[4] Brown was charged with theft on January 5, 2010, when she allegedly inadvertently forgot to pay for two bags of charcoal at her local dollar store.  (Compl. ¶ 75.)  Brown promised to appear in municipal court to answer to the charge.  (*Id.* ¶ 79.)  According to the Complaint, Brown was not ever convicted of the theft.  (*Id.* ¶ 74.)

[5] According to the Complaint, Brown received the second theft citation after she took merchandise out of a store without remembering to pay for it.  (Compl. ¶ 82.)

(*Id.* ¶ 49.)   The reason given for the suspension was Sealy ISD's need to further investigate Brown's March theft citation.   (*Id.* ¶ 51.)   On March 22, 2010, Brown received another suspension from her supervisor, notifying her that her suspension was extended, with pay, until March 23, 2010 and directing Brown to report to her supervisor on March 24, 2010.   (*Id.* ¶¶ 52–53.)   The justifications for the suspension were dual: Sealy ISD wished to further investigate Plaintiff's March 1 citation and, additionally, Kana was appointed as interim superintendent for Sealy ISD.   (*Id.* ¶¶ 52, 59.)

On March 29, 2010, Brown again received a written reprimand from her immediate supervisor.   The reprimand concluded that Brown had engaged in acts of "moral turpitude," including violations of Sealy ISD policies and the Code of Ethics and Standard Practices for Texas Educators.   (*Id.* ¶ 57.)   On March 30, 2010, Brown was again suspended—this time directly by Kana.   (*Id.* ¶ 61.)   During Brown's suspension, which lasted until April 5, 2010, Kana recommended that the Sealy Board of Trustees "undertake further adverse personnel actions" against Brown.   (*Id.* ¶ 62.)   Acting on Kana's recommendations, the Board of Trustees suspended Brown without pay and proposed the termination of her two-year teaching contract.   (*Id.* ¶ 63.)

Brown appealed the recommendation to the Texas Education Agency's hearing examiner presiding over her case.   (*Id.* ¶ 64.)   The hearing examiner "noted Plaintiff's differential treatment when compared with the disciplinary actions meted out to other [Sealy ISD] employees with graver infractions" and recommended that the Board of Trustees consider reinstating Brown.   (*Id.* ¶ 66.)   Instead, the Board of Trustees terminated Brown on June 17, 2010.   (*Id.* ¶ 67.)   Following her termination, Brown filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").   On February 1, 2011, Plaintiff received a right-to-sue letter from the EEOC.   (Doc. No. 1, at 12.)   Acting *pro se*,

Brown filed her initial complaint on May 6, 2011. (Doc. No. 1.) After obtaining counsel, Brown filed an amended complaint on November 7, 2011.[6] (Doc. No. 25.)

Plaintiff has sued the Board of Trustees of Sealy Independent School District ("SISD Board Defendants") and Superintendent Scott Kana ("Kana" or "Defendant Kana"), both in his official and individual capacity (collectively, "the SISD Defendants" or "Defendants"). Plaintiff asserts claims under 42 U.S.C. §§ 1981 and 1983, including both free speech and equal protection violations, Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA"). Plaintiff asserts all claims against both the SISD Board Defendants and Defendant Kana. (*Id.* ¶¶ 14–71, 100–103, 72–99, 104–108.)

On November 21, 2011, the SISD Defendants filed a motion to dismiss. (Doc. No. 30.) In their motion to dismiss, the Sealy ISD Defendants argue that the Complaint should be dismissed on the following grounds: (1) Plaintiff fails to allege sufficient facts to establish that the subject of her speech involved a matter of public concern sufficient to support her First Amendment retaliation claim; (2) Plaintiff fails to allege a custom or policy as the moving force behind the alleged violations of §§ 1981 and 1983; (3) Plaintiff fails to allege sufficient facts to state a claim for improper discrimination or retaliation under the ADA; (4) both Plaintiff's ADA and Title VII claims cannot be asserted against Kana in his individual or official capacity; (5) the doctrine of qualified immunity requires dismissal of Plaintiff's § 1983 claims against Defendant Kana; and (6) Plaintiff's TCHRA claims cannot be maintained against Kana in his individual capacity.

---

[6] In her original Complaint, Plaintiff also sued the Texas Education Agency ("TEA"), TEA Commissioner Robert Scott, and TEA hearing examiner Kyle Frazier, in addition to the Sealy ISD Board of Trustees and Kana. These three additional defendants initially filed a motion to dismiss (Doc. No. 9), which was rendered moot by Plaintiff's filing of her amended complaint. The SISD Defendants' original motion to dismiss (Doc. No. 10), was also rendered moot by Plaintiff's amended complaint.

## II.    LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  A motion to dismiss under Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  To survive a defendant's motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient to satisfy a plaintiff's obligation to provide grounds for entitlement to relief. *Twombly*, 550 U.S. at 544.  Although a complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."  *Id.*

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Inv. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can

consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  Further, a court may refer to matters of public record when deciding a motion to dismiss.  *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000).  Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that the plaintiff has adequately pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).

Additionally, "when a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff."  *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Shultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)).  In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'"  *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

### III.    ANALYSIS

#### A.  Brown's Title VII Claim

Plaintiff asserts Title VII claims against both Defendant Kana and the SISD Board Defendants.  (Compl. ¶¶ 100–03.)  Defendants argue that Plaintiff may not maintain a Title VII action against an employee in his individual capacity and that, therefore, Plaintiff's claims against Kana must be dismissed.  In her response in opposition, Plaintiff concedes this point, acknowledging that "Kana is not an 'employer' as defined by Title VII."  (Doc. No. 34, at 1.)

Plaintiff's Title VII claim against Defendant Kana must be dismissed and, therefore, the Court considers the merits of Plaintiff's Title VII claim only with respect to the SISD Board Defendants.

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin . . ."  42 U.S.C. § 2000e-2(a).  In Title VII discrimination cases, the plaintiff bears the burden of proving a prima facie case that the defendant made an employment decision that was motivated by a protected factor.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  To state a prima facie case, the plaintiff must show that (i) she is a member of a protected class; (ii) she is qualified for the position; (iii) an adverse employment action occurred; and (iv) she was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees outside the protected group.  *Id.* at 802; *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

If the plaintiff makes a prima facie showing, the burden then shifts to the defendants "to articulate a legitimate, nondiscriminatory . . . reason for [the] employment action."  *Id.* at 557. This burden is one of production, not persuasion, and involves no credibility assessment.  *Id.*  If the defendants meet the burden of production, then the plaintiff must show that the proffered reason is a mere pretext for the true, discriminatory purpose.  *Id.*

Brown satisfies the first element of a Title VII claim; she is African-American.  (Compl. ¶ 7.)  With respect to the second element, there is no indication that Brown was not qualified for the teaching position, which she held for almost fourteen years prior to her termination.  (*Id.* ¶

26.)  Nor do Defendants contest Brown's qualifications for the position.  Brown also satisfies the third element required for her to state a prima facie case of discrimination, in that she suffered an adverse employment action when she was terminated from her teaching position.  (*Id.* ¶ 67.) Whether or not Brown has adequately alleged a prima facie case of a Title VII violation hinges on the fourth element, whether Brown has adequately alleged that she was treated less favorably than other similarly situated employees outside her protected group.

Brown alleges that she was treated differently because she was terminated after she received two Class C misdemeanor citations whereas at least four other white SISD employees remained employed after they incurred comparable or more severe criminal sanctions.  Brown alleges these white employees were accused of or found guilty of criminal misconduct but were allowed to retain their employment, while Brown herself was immediately reprimanded, suspended during Sealy ISD's investigation, and, ultimately, terminated.  (Compl. ¶ 87.)

"[F]or employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"  *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (quoting *Smith v. Wal-Mart Stores (No. 471).*, 891 F.2d 1177, 1180 (5th Cir. 1999)) ("[I]n order for a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'").  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

9

According to the Complaint, Brown received two theft citations in the two months leading up to her termination.  Brown was charged with theft on January 5, 2010, when she forgot to pay for two bags of charcoal at a local dollar store.  (Compl. ¶ 75.)  The total cost of the bags was $9.74.  Brown agreed to appear in municipal court to answer the charges.  (*Id.* ¶ 79.)  Brown later received a second theft charge after she forgot to pay for additional merchandise she accidentally took out of a store.  (*Id.* ¶ 81.)  The Complaint represents that Brown has no criminal history or arrest record to date, as she was never convicted on either charge.  (*Id.* ¶ 80.)

As a comparator, Brown first points to a white employee who was accused of two felonies—forgery and identity theft—at some point "over the past five to ten year period."  (*Id.* ¶¶ 88, 101.)  The Complaint claims that the two felonies were significantly more serious than Brown's own citations, stating that the felonies involved larger amounts of money and would have carried jail sentences upon conviction.  (*Id.* ¶ 88.)  According to the Complaint, this white employee received no discipline while his criminal case was pending and remains employed at SISD.  (*Id.* ¶ 89.)  The Complaint does not state whether the employee was ever actually convicted of the felonies.

Brown points to a second employee, also white, who was accused of misusing a credit card to obtain somewhere between $500 and $1,500 at some point "over the past five to ten year period."  (*Id.* ¶ 91.)  While this employee did ultimately resign, the Complaint alleges that he was given the opportunity to do so without the public fanfare that Brown faced.[7]  (*Id.* ¶ 92.)  The Complaint does not state whether this employee was ever convicted of misuse of a credit card, only that the "employee was nor (sic) disciplined in the summer (sic) manner as the plaintiff."  (*Id.*)

---

[7] According to the Complaint, Brown's "institution of her administrative charge of discrimination was reported in the *Sealy News*, a newspaper of general circulation in Sealy Texas."  (Compl. ¶ 106.)

Brown also points to a third white employee who, albeit not terminated, was *hired* after stealing a trailer worth more than the amount of money at stake in Brown's theft case. (*Id.* ¶¶ 93, 101.)  The Complaint states that the third individual was hired for a teaching position.  The Complaint does not state when this employee's theft occurred, failing even to locate the alleged criminal history in the already broad "five to ten year period" alleged with respect to the preceding two proposed comparators.

Finally, Brown points to a fourth white employee who received only a three day suspension with pay after being accused of inappropriate sexual contact with students of the opposite sex.  (*Id.* ¶¶ 95, 101.)  Even after the accusation was investigated, the white employee was merely transferred to another position, without a loss in pay or employment.  (*Id.* ¶ 96.)  The Complaint does not state what type of position this employee held, when the alleged misconduct occurred, or whether the accusation was found to be true.

In deciding whether the four SISD employees constitute similarly situated individuals, the Court is cognizant of the fact that "the Fifth Circuit defines similarly situated narrowly." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010).  Comparably serious misconduct, by itself, is not enough to make employees similarly situated.  *Perez*, 395 F.3d at 213.  Instead, the employees' circumstances must have been "nearly identical in order to find them similarly situated." *Id.*

Here, Plaintiff points to four white SISD employees with facially similar or, in fact, more severe criminal histories than she, who were not terminated on account of their criminal past. The Complaint does not allege that the majority of these individuals were teachers, or otherwise held Brown's same job or responsibilities, or that their criminal convictions or citations occurred in the same time period as Brown's.  These omissions pose serious problems in deciding whether

the proposed individuals are or were similarly situated.  *See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (providing that employees with different supervisors, different work responsibilities, or dissimilar violations are generally inappropriate comparators); *see also Hart v. Starkville Ford-Lincoln-Mercury, Inc.*, No. 1:10CV92-SA-DAS, 2012 WL 426440, *4 (N.D. Miss. Feb. 9, 2012) (finding employees not similarly situated where plaintiff worked as a service writer and proposed comparator worked as a body shop manager and reported to a different supervisor); *see also King v. W.W. Grainger, Inc.*, No. 2:11CV00016-WAP-JMV, 2012 WL 777319, *7 (N.D. Miss. Jan. 26, 2012) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.") (internal citations omitted); *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312, at *8 (W.D. La. Sept. 22, 2011) (finding employees not similarly situated where alleged conduct by comparators occurred in 2007 and 2008 whereas plaintiff's conduct occurred in 2009).

The fact that the Complaint cites no specific year with respect to two of the employees and only a broad five to ten year period with respect to the other two employees raises an additional concern: it is unclear whether these proposed comparator employees had their employment status determined by the same supervisor.  The facts as averred in the Complaint suggest this is in fact *unlikely*.  The Complaint alleges that it was Defendant Kana who recommended Brown's termination to the SISD Board Defendants.  (Compl. ¶ 62.)  According to the Complaint, Kana was not appointed interim superintendent until March 23, 2010.  (*Id.* ¶ 59.) Plaintiff had already been suspended and reprimanded nine times before by her immediate supervisor, Lechler.  There is nothing to suggest that Kana would have been in any other position of authority over the other four white employees whose criminal violations occurred on

unidentified dates or over the prior five to ten year period.  Despite the absence of allegations related to Defendant Kana's involvement in the employment decisions related to the four white employees, the Complaint does attribute the ultimate employment decisions to the SISD Board of Trustees.  (Compl. ¶¶ 93, 97.)

The minimal factual allegations provided in the Complaint with respect to Brown's proposed comparators—especially the absence of specific facts related to the individuals' job titles, periods of employment, histories of misconduct, and supervisors—make it difficult to determine whether the four individuals were in fact similarly situated for purposes of Title VII analysis.  However, "[t]o avoid dismissal, an employment discrimination plaintiff does not necessarily need to plead a prima facie case of discrimination; rather, h[er] complaint must give the defendant fair notice of what his claims are and the grounds upon which they rest."  *Cornish v. Lancaster Indep. Sch. Dist.*, 2005 WL 170717, at *2 (N.D. Tex. Jan. 24, 2005); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002); *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D.Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'") (citations omitted).  Although it is unclear whether Plaintiff currently points to individuals who can properly be considered similarly situated for purposes of Title VII, the Court cannot say at this juncture that Plaintiff would be unable to do so with the aid of discovery.  *Swierkiewicz*, 534 U.S. at 512 (noting that before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case").

Here, Plaintiff has presented some, albeit minimal, allegations of treatment different from similarly situated non-members of her protected class.  *See Williams v. Trader Pub. Co.*, 218

F.3d 481, 484 (5th Cir. 2000) (holding that circumstantial evidence may be used to prove discrimination).   The Complaint identifies four specific employees who received criminal citations while employed by SISD or were hired with a criminal history.   All four of the individuals identified are white.   At least two of those individuals worked in teaching positions, like the one Plaintiff held herself.   The Complaint alleges that the criminal histories of the four employees were more severe than Plaintiff's own criminal history.   Unlike Plaintiff, the four individuals were not terminated on account of their criminal histories.   The Complaint thus gives Defendants notice of Plaintiff's race discrimination claim and the grounds on which it is based such that Defendants should be able to bear their burden of articulating a legitimate, nondiscriminatory reason for her termination.

While Defendants urge this Court to dismiss all of Plaintiff's claims, Defendants fail to articulate a legitimate, nondiscriminatory reason for Brown's termination.   *See McDonnell Douglas Corp.*, 411 U.S. at 803.   Instead, Defendants focus their argument for dismissal on explaining Fifth Circuit precedent prohibiting Title VII suits against employees in their individual capacities.   (Doc. No. 30, at 10.)   While Defendants' argument supports dismissal of Plaintiff's Title VII claims against Defendant Kana, it fails to articulate a legitimate, nondiscriminatory reason behind the SISD Board Defendants' decision to terminate Brown. Because the Complaint adequately sets out the facts and grounds for Brown's race discrimination claim and because Defendants have failed to identify a legitimate, nondiscriminatory reason for Brown's termination, the Court must deny Defendants' motion to dismiss Brown's Title VII claim against the SISD Board Defendants.   As discussed above, Brown's Title VII claim against Defendant Kana is dismissed.

### B.  Brown's TCHRA Claim

The Texas Commission on Human Rights Act ("TCHRA") was enacted to correlate "state law with federal law in the area of discrimination in employment." TEX. LAB. CODE ANN. § 21.001(3) (West 2006); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 48 (Tex. 1991). The TCHRA makes specific reference to Title VII, explaining that one of the TCHRA's purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001. Accordingly, the TCHRA is interpreted in a manner consistent with federal laws that prohibit employment discrimination, and analysis of Brown's employment discrimination claim under the TCHRA is identical to that under Title VII. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir. 1999) (stating that "the law governing claims under the TCHRA and Title VII is identical"); *Allison v. City of Fort Worth, Tex.*, 60 F. Supp. 2d 589, 593 (N.D. Tex. 1999) ("Because the TCHRA is the state counterpart to Title VII, the same standards apply.").

As discussed above, because Brown has stated a claim under Title VII, the Court must allow her parallel TCHRA claims against the SISD Board Defendants to proceed. However, because Kana is not an "employer" for purposes of the TCHRA, the Court dismisses Brown's TCHRA claim against Defendant Kana.

### C. Brown's Civil Rights Act Claims

Brown contends that the SISD Board Defendants and Defendant Kana, both individually and in his official capacity, have violated her constitutional rights under the First and Fourteenth Amendments and are therefore liable under 42 U.S.C. §§ 1981 and 1983. (Doc. No. 34, at 1.) Defendants argue both that (1) the Complaint fails adequately to allege a violation of Brown's constitutional rights and (2) that, even if a violation of Brown's constitutional rights is adequately alleged, Sealy ISD cannot be held liable under the Civil Rights Act statutes because it

15

maintains no policy or custom of discrimination.  Further, Defendants deny Kana's liability in his official capacity on the ground that an official cannot be held independently liable for his official actions.  Finally, Defendant Kana asserts that he is entitled to qualified immunity with respect to Brown's Civil Rights Act claims asserted against Kana in his individual capacity.

### i.  Liability under the Civil Rights Act Statutes

#### a.  Elements of Section 1981 claims

The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits racial discrimination, both public and private, in the making or enforcement of contracts.  42 U.S.C. § 1981.  In order to establish a claim under § 1981, a plaintiff must demonstrate that: (1) the plaintiff belongs to a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute, which include the making and enforcing of contracts.  *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).  Liability cannot be imposed under § 1981 absent proof of purposeful discrimination. *General Bldg. Contractors Ass'n Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982).

#### b.  Elements of Section 1983 claims

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action to redress the violation of constitutional rights or federal law by those acting under color of state law.  *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996).  Section 1983 is not itself a source of substantive rights, but rather "merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

To prevail on her § 1983 claim, Brown must prove that a person acting under color of state law deprived her of a right secured by the Constitution or the laws of the United States.

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).  To adequately state a claim under § 1983, Brown must support her claim with specific facts demonstrating a constitutional deprivation and may not rely on conclusory allegations.  *Schultea v. Wood*, 47 F.2d 1427, 1433 (5th Cir. 1995).  Thus, for Brown to recover, she must show that Defendants deprived her of a right guaranteed by the Constitution or the laws of the United States.  She must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Brown claims that two of her constitutional rights were violated: her First Amendment right to free speech and her Fourteenth Amendment right to equal protection.

### ii.  Brown has not adequately alleged a First Amendment violation

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must establish the following four elements: (1) that the employee suffered an adverse employment decision; (2) that she engaged in speech involving a matter of public concern; (3) that her interest in commenting on the matter of public concern outweighed the employer's interest in promoting efficiency; and (4) that her speech motivated the defendant employer's retaliatory action.  *Finch v. Fort Bend Indep. Sch. Dist.*, 33 F.3d 555, 563 (5th Cir. 2003).  If an employee succeeds in demonstrating that the speech at issue involves a matter of public concern, the court must perform a balancing test and attempt to "strike a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern [against] the interest of the [school district], as an employer, in promoting the efficiency of the public services it performs through its employees."  *James v. Texas Collin County*, 535 F.3d 365, 379 (5th Cir. 2008) (citation omitted).  If the plaintiff meets her burden on these four elements, the defendant

must prove that it would have taken the adverse employment action even absent the protected speech. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

Here, Brown satisfies the first element of analysis, as she suffered an adverse employment action: she received numerous reprimands and, ultimately, was terminated. *See Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.")   However, Defendants argue that Plaintiff fails to establish two of the other elements required to allege a first amendment claim.  First, Defendants contend that Brown has not set forth sufficient facts to demonstrate that the subject of her speech—her belief that Kana was intoxicated at a school function—was a matter of public concern.  (Doc. No. 30, at 4.) Second, Defendants argue that the Complaint does not allege sufficient facts to demonstrate that the speech in question motivated Brown's termination.  (*Id.* at 4–6.)  Specifically, because the reasons given for Plaintiff's series of reprimands and suspensions all related to her two theft citations, which Plaintiff admits occurred, the Complaint fails to draw a connection between Plaintiff's reporting of Kana's intoxication and the alleged adverse actions.  The Court considers each of these elements in turn.

### a.  Brown's speech does not involve a matter of public concern

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on a matter of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008).  Whether the speech at issue involves a matter of public concern is a question of law. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City*

18

*of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). Whether an employee's speech addresses a matter of public concern is to be determined by examining the content, form, and context of a given statement. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

Brown claims she suffered a series of adverse employment actions after she reported to the superintendent of Sealy ISD that she believed she had seen Kana, assistant superintendent at the time, intoxicated at a school function on school property. (Compl. ¶ 29.) Brown argues that when she reported Kana's state of intoxication to the Sealy ISD superintendent she spoke on a matter of public concern. (Compl. ¶ 32.) The Complaint does not explain the outcome of Brown's report, *i.e.*, whether any investigation into Kana's behavior occurred and whether Brown's perception of Kana's state of intoxication was ever confirmed as correct. However, "[n]either the accuracy of the speech, nor the motivation of the speaker, plays a role in determining whether the expression involves a matter of public concern." *Denton*, 136 F.3d at 1043. While the truth of Brown's speech is not important, the form, content, and context of the speech here is relevant and is sufficiently distinct from prior precedent so as to prevent this Court from finding that Brown's speech addressed a matter of public concern.

The Fifth Circuit "has held that speech reporting official misconduct, wrongdoing, or malfeasance on the part of public officials involves matters of public concern." *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir. 1998). However, while the reporting of perceived "official misconduct" can constitute a matter of public concern, such speech typically involves the reporting of conduct that, if true, would constitute *illegal* activity. For example, in *Denton*, a probation officer's letter to the Texas Education Agency complaining about the school district defendant's failure to provide educational services to a minor child constituted a matter of public concern because it reported "perceived wrongdoing on the part of [the school district]." 136

F.3d at 1041, 1043; *see also Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir. 1994), superseded on other grounds, 47 F.3d 1427 (1995) (en banc) (finding that a police chief's letter reporting on the suspected criminal activity of city council member addressed a matter of public concern); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 192 (5th Cir. 1988) (letter containing "serious allegations of possible police misconduct" was related to a matter of public concern where the letter was sent to the police chief, mayor, city council members, and local reporters).

Here, the Complaint alleges that Brown believed Kana was intoxicated while in attendance at a function "on [Sealy ISD] property and facilities," but the Complaint does not contend that Kana was in explicit violation of either SISD or state policy, regulation, or law.  (*Id.* ¶ 28.)  Brown was motivated solely by her concern "about the example and appearance that a high level administrator would set for the faculty, employees and students of [Sealy ISD]." (Compl. ¶ 29.)  While Kana's appearance of intoxication may have been distasteful to Brown and, possibly, to other members of the public, it is far from clear that intoxication at a school function constitutes "evidence of corruption, impropriety, or other malfeasance on the party of [school] officials . . . [that] clearly concerns matters of public import." *Conaway v. Smith*, 853, F.2d 789, 796 (10th Cir. 1988).  The Complaint thus fails to point to the type of illegality or serious misconduct that would make the content of Brown's report a matter of public concern.

### b. Plaintiff has not demonstrated a nexus between her termination and her speech

Even if the Complaint were to allege sufficient facts to demonstrate that Brown's speech involved a matter of public concern, the Complaint fails to satisfy the fourth element required to state a claim for a free speech violation.  In order to establish that the speech at issue is constitutionally protected from retaliation by a public employer, Brown must establish that the adverse employment action was motivated by her protected speech.  *See Foley v. Univ. of*

*Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003); *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 460 (5th Cir. 1990).  The Complaint fails to demonstrate this here, as Plaintiff does not contend that the SISD Defendants terminated Brown for reporting Kana's state of intoxication.

To the contrary, the Complaint presents facts that support an alternate reading of the motivations prompting Brown's termination.  The Complaint details the series of reprimands and suspensions Brown received prior to her termination and explains that these disciplinary actions were meted out in response to the two Class C theft citations Brown received.  (Compl. ¶¶ 37–57.)  The Complaint acknowledges that Brown did in fact receive two misdemeanor citations prior to the Board's decision to terminate her employment contract.  (*Id.* ¶ 74.)  The adverse employment actions taken against Brown were predicated on her misdemeanor citations, and the Complaint alleges no additional facts to suggest that Brown's *speech* motivated the reprimands, suspensions, and, ultimately, her termination.  *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–48 (5th Cir. 2003).  Because the Complaint asserts no facts to suggest that the SISD Defendants made adverse employment decisions against Brown on account of Brown's speech, the Complaint fails to state a claim for violation of Brown's First Amendment free speech rights.

### iii.  Brown has adequately alleged a Fourteenth Amendment violation

Brown argues that the SISD Defendants treated her differently from non-African American employees, thereby denying her equal protection of the laws as guaranteed under the Fourteenth Amendment.  The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  The Equal Protection Clause of the Fourteenth Amendment does not require that all persons be treated alike, but, rather, "that all persons *similarly situated* should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Brown claims that the adverse

disciplinary actions she suffered constituted different treatment from the actions taken against other similarly situated, white employees.   To establish a disparate treatment claim, the Fifth Circuit requires a plaintiff to show "that the misconduct of which the plaintiff was discharges was nearly identical to that engaged in by other employees."   *Okoye v. Univ. of Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citations omitted).   Thus, Brown must show that other teachers were not terminated for comparable criminal conduct.

As discussed above in connection with Brown's Title VII claim, Brown has alleged that four similarly situated employees outside her protected class were treated more favorably than she was.   Specifically, other, non-African American employees of Sealy ISD received comparable—or more severe—criminal citations but were allowed to retain their employment. (Compl. ¶¶ 88–96.)  Because the Complaint adequately alleges that similarly situated individuals were treated differently by the school district, Brown has stated a claim for a violation of her equal protection rights under the Fourteenth Amendment.

### iv. Even though the Complaint has alleged a constitutional violation, Defendants cannot be held liable under §§ 1981 and 1983

To establish a § 1983 claim for a violation of constitutional rights[8], Brown must prove that (1) a policymaker; (2) took action pursuant to an official policy or custom; and (3) a violation of constitutional rights occurred whose "moving force" was the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).   "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."  *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

---

[8] The Court frames its analysis in terms of Section 1983 because the Supreme Court has clarified that "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001).  Because "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units," Brown has no viable, independent cause of action against Defendants under 42 U.S.C. § 1981.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).

### a. *Brown fails to identify a policy or custom in place at Sealy ISD*

In order for the SISD Defendants to be liable for any violation of Brown's constitutional rights, the alleged harm must stem from the execution of an official policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Evans v. City of Houston*, 246 F.3d 344, 357-58 (5th Cir. 2001). When proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski*, 237 F.3d at 579. A plaintiff unable to identify an official policy may still proceed under § 1983 where she can point to "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. The Fifth Circuit defines official policy as:

> A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

A custom is described as:

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Id.*

Here, the Complaint does not allege that the SISD Defendants acted pursuant to an official policy. The Complaint makes no reference to any Sealy ISD policy related to disciplinary actions generally or to proper treatment of employees with criminal citations specifically. Brown alleges that she was discriminated against because the SISD Defendants terminated her teaching contract on account of her misdemeanor citations but did not fire other, similarly situated employees for similar criminal misconduct. These allegations are insufficient

to demonstrate that Defendants had a policy explicitly authorizing or condoning discriminatory employment practices.

Similarly, Brown has failed to allege that it was the well-established custom of Sealy ISD or its employees to engage in discriminatory practices.  "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  Brown alleges that multiple similarly situated white employees received criminal citations during their time as SISD employees and were punished to a lesser extent or differently than Brown.  However, "[i]f actions of [school] employees are to be used to prove a custom for which the [school board] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school] employees."  *Id.* at 842.  Here, the Complaint contains no allegations to suggest that Brown's termination resulted from a "permanent and well-settled" discriminatory practice at SISD.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Brown identifies only four instances when other SISD employees with criminal histories were treated differently from her.  Three of those events occurred at some point "over the past five to ten year period."  (Compl. ¶ 87.)  The Complaint identifies additional instances of alleged different treatment to white employees but fails to situate those instances in any time period at all.  (*Id.* ¶¶ 93.)  "Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy."  *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 722 (S.D. Tex. 2002).

In sum, because the Complaint does not point to a "pattern of similar incidents" that could constitute a custom, Brown fails to allege that her termination was more than an isolated incident of an adverse employment action taken against an African American employee. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (deciding that an unconstitutional custom or policy could not be inferred from a city's "isolated decision not to discipline a single officer for a single incident of illegality") (internal citations omitted).

### b. Brown fails to identify a discriminatory decision made by a policymaker

In addition to the failure to point to an official policy or custom, the Complaint fails to identify an authorized decision maker whose single decision could be understood as Sealy ISD policy. *See Piotrowski*, 237 F.3d at 578-79. Governmental entities "are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

The Sealy ISD Board of Trustees constitutes a policymaker for Sealy ISD. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999) (finding that a board's decision to affirm a superintendent's recommendation to transfer a teacher was an act of official policy and noting that "[o]n at least two occasions, we have held that the board of trustees of an independent school district . . . is a final policymaker for purposes of § 1983"). Thus, the SISD Board Defendants may be liable for the board's actions because the board is a policymaker for the school district in its capacity to terminate employees. However, for the SISD Board Defendants to be liable, Brown must adequately allege that *the Board Defendants*—not just Defendant Kana—discharged Brown on account of her race. Brown fails to do so.

Brown does not claim that the SISD Board Defendants harbored any discriminatory intent in making the decision to terminate her employment.  Brown alleges only malicious intent with respect to Defendant Kana's reason for his recommendation.  But even Brown's allegations related to Kana are devoid of discriminatory intent allegations related to her race; instead, Brown claims that Kana based his recommendation for her termination on the fact that she reported that he was intoxicated to his predecessor, Superintendent Morris.  (Compl. ¶ 30.)  The fact that Brown also happened to be African American appears, even from the face of the Complaint, irrelevant to Kana's recommendation.  The Complaint does not allege that Kana was motivated by race considerations.  Moreover, Brown admits that the stated reasons for her termination—receipt of multiple misdemeanor citations in a short period of time—occurred before Kana recommended her termination.  Even if Brown is correct as to Kana's motivation, her reasoning bears no relation to the SISD Board Defendants' liability unless the SISD Board Defendants acted in retaliation independently, which the Complaint does not allege.

Finally, even if Kana possessed a discriminatory intent in recommending Brown's termination, Texas law places final policymaking authority for an independent school district in its board of trustees only.  Thus, SISD cannot be liable for a single action of a nonpolicymaking employee such as Kana.  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (school district not liable when school board, without knowledge of alleged retaliatory motive, acted on recommendation of superintendent and principal to terminate employee).

Because the Complaint does not allege that the SISD Board Defendants acted on a policy or custom or with any discriminatory intent in terminating Brown, the Court must dismiss Plaintiff's §§ 1981 and 1983 claims brought against the SISD Board Defendants.

### v.  Liability of Defendant Kana

#### a.  *Kana's Liability in his Official Capacity*

Brown has sued Kana both individually and in his official capacity as superintendent of Sealy ISD.  To the extent he is sued in his official capacity, Kana's liability is coextensive with that of Sealy ISD, as official capacity lawsuits are an alternative means of pleading an action against the governmental entity involved.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that a suit against an official in his or her official capacity is not a suit against the official personally, but rather a suit against the official's office).  Following the Supreme Court's decision in *Monell*, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly."  *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).  Because Brown's action against Kana in his official capacity is of no independent legal significance, the Court must also dismiss Brown's §§ 1981 and 1983 claims against Defendant Kana.

#### b.  *Kana's Individual Liability*

Defendants also contend that Brown's § 1983 claims against Defendant Kana in his individual capacity must be dismissed on qualified immunity grounds.  (Doc. No. 10, at 7.)  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Schultea v. Wood*, 47 F.3d 1427, 1432–34 (5th

27

Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004).   This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  The appropriate inquiry can be summarized as "whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Williams v. Kaufman County*, 352 F.3d 994, 1003 (5th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  An individual defendant's subjective state of mind is irrelevant to the qualified immunity inquiry.  *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001).

In examining whether an official is entitled to qualified immunity, a court must conduct the two-pronged analysis outlined in *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).  First, the court must determine whether the defendant's conduct violated a constitutional right.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Second, the court must determine whether the right in question was clearly established.  *Id.*  After the Supreme Court's decision in *Pearson v. Callahan*, a court may exercise discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the particular case.  555 U.S. at 236.  Though *Pearson* outlines only the two steps described above in the qualified immunity analysis, several Fifth Circuit panels have concluded that the "qualified immunity question" involves not only an inquiry into whether the right was clearly established at the time of the conduct, but also whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken.  *See, e.g., Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's

conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."). That is, "[t]he defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Thompson*, 245 F.3d at 457.

Here, the Complaint does not allege that Kana recommended Brown's termination on the basis of a discriminatory reason. Brown has alleged that Kana wanted her fired because she reported that she believed Kana was intoxicated at a school function. Moreover, Brown admits that the stated rationale for her termination—her receipt of multiple misdemeanor citations in a two-month period of time—occurred before Kana actually recommended her termination and before the Sealy ISD Board acted on his recommendation. Apart from the assertion that Kana was white, the Complaint alleges no facts to suggest that Kana violated Brown's constitutional rights. Further, the Complaint states that Kana did not actually discharge Brown; he merely recommended her termination to the Sealy ISD Board, which made the final decision. (Compl. ¶¶ 62–63.) As the Fifth Circuit has explained, if Kana "did not cause the adverse employment action, [he] cannot be liable under § 1983, no matter how unconstitutional [his] motives." *Beattie*, 254 F.3d at 605. "[E]ven if the board adopted [his] recommendation, that recommendation exhibited no unconstitutional motive on its face."[9] *Id.*

---

[9] Even if the Complaint had adequately alleged that Kana violated Brown's constitutional rights in recommending her termination, the Complaint fails to allege that Kana's conduct was objectively unreasonable. The Complaint acknowledges that Brown was issued repeated reprimands and suspensions prior to Kana's recommendation for her termination. These prior disciplinary actions stemmed from Brown's pattern of misconduct in which she incurred multiple misdemeanor theft charges in a short span of time. Considering Brown's criminal history, there is nothing in the Complaint to suggest that Kana's recommendation was objectively unreasonable under the circumstances.

Because the Complaint does not allege that Kana violated Brown's constitutional rights in recommending her termination, Defendant Kana is entitled to the defense of qualified immunity and Plaintiff's §§ 1981 and 1983 claims against Defendant Kana must be dismissed.

### D.  Brown's ADA claim

The Complaint states that Brown was diagnosed with attention deficit hyperactive disorder ("ADHD") and that her ADHD "adversely affects her ability to remember sort (sic) term and to concentrate on one task at a time."  (Compl. ¶ 73.)  Plaintiff contends that she informed Lechler, her supervisor, of her condition but that Lechler was unsympathetic.  (*Id.* ¶¶ 83–84.)  Plaintiff also alleges that the SISD Board knew of her disability when they voted to terminate her teaching contract but did not consider a sanction less severe than termination.  (*Id.* ¶ 85.)

Defendants urge this Court to dismiss Plaintiff's ADA claim on two accounts.  First, Defendants argue that Plaintiff has failed to exhaust her administrative remedies as required under the ADA and that, therefore, this Court lacks jurisdiction over Plaintiff's ADA claim. (Doc. No. 30, at 7.)  Second, Defendants contend that Plaintiff has not pleaded any facts that identify the limitations she faced in her employment as a result of her disability or the accommodations she requested from Sealy ISD on account of her disability.  (*Id.*, at 9.)

### i.  Brown has complied with administrative exhaustion requirements

The Court first turns to Defendants' exhaustion argument.  Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC.  *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  The ADA incorporates by reference the procedures for exhaustion set out under Title VII.  *Wesley v. Dallas ISD*, No. 03-08-CV-2025-K, 2009 WL 193786, *2 (N.D. Tex. Jan. 27,

2009).  Here, Defendants admit that Plaintiff's timely administrative charge of discrimination did in fact identify "disability" as a basis for her complaint to the EEOC.  (Doc. No. 30, at 7.) However, Defendants argue that Plaintiff's ADA claim is not properly considered within the scope of her administrative complaint because the narrative portion of her complaint considered by the EEOC presented facts focused exclusively on her discrimination claim.  (*Id.*)

In reviewing the adequacy of exhaustion procedures, a court is to consider not only "the scope of the administrative charge itself, but the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge.'"  *Joseph v. Univ. of Texas Medical Branch at Galveston*, No. H-03-5402, 2006 WL 1442108, *1 (S.D. Tex. May 23, 2006).  Here, it is undisputed that Plaintiff timely filed a charge of discrimination with the EEOC.  (Doc. No. 30, at 7.)  Plaintiff's charge identified "disability" as a basis for her complaint.  (*Id.*)  Further, the EEOC issued Plaintiff a right-to-sue letter on February 1, 2011.  (Doc. No. 1, at 12.)  The right-to-sue letter contains a checkmark in the box noting that the EEOC closed the file for the reason: "The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge."  (*Id.*)  The "NOTICE OF SUIT RIGHTS" portion of Brown's right-to-sue letter lists the ADA (in addition to Title VII, the Genetic Information Nondiscrimination Act, and the Age Discrimination in Employment Act) as one of the statutes under which Brown possesses the right to sue.  (*Id.*)  Because the Court does not have before it any further documentation related to the scope of the EEOC investigation and the EEOC charge ostensibly provides Brown with notice of her right to sue under the ADA, dismissal for failure to comply with exhaustion requirements is inappropriate.

### ii.  Brown's ADA claim fails on the merits

The Court turns next to Defendants' proposed alternate grounds for dismissal, under which they argue (1) that Plaintiff fails to allege sufficient facts to state a claim for improper discrimination or retaliation under the ADA and (2) that Plaintiff's ADA claim cannot be asserted against Kana in his individual or official capacity.

The Americans with Disabilities Act ("ADA") prohibits discrimination in employment against persons with a disability, providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   To prevail on an ADA claim, a plaintiff must prove (1) that she has a "disability"; (2) that she is "qualified" for the job; and (3) that an adverse employment decision was made solely on account of her disability.  *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir. 1996).

Because Defendants make no argument to the contrary, the Court assumes for purposes of the motion to dismiss that Plaintiff has satisfied the second prong of pleading her ADA claim and was "qualified" for her job, given that she was employed by SISD for almost fourteen years prior to her termination.  However, Plaintiff fails to allege facts related to her disability and to any action or inaction on the part of Sealy ISD related to that disability.  As a result, Plaintiff's ADA claim falters with respect to both the first and the third prongs of the inquiry.

To state a claim under the ADA, the Complaint must adequately allege that Brown suffered from a "disability" as defined under the ADA.  The ADA defines "disability" to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such

an impairment.  42 U.S.C. § 12102(1); *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010).

Merely having an impairment does not automatically make one disabled for ADA purposes.

*Toyota Motor Mfg. Ky. V. Williams*, 534 U.S. 184, 195 (2002).

To qualify as having an actual disability, the plaintiff must show that her impairment

limits a major life activity.  *Id.*  "Major life activities" include activities that are of "central

importance to daily life," such as walking, seeing, hearing, performing manual tasks,

concentrating, learning, hearing, speaking, breathing, and working.  *Id.*  In addition, the

limitation placed on the major life activity as a result of the disability must be "substantial."  *Id.*

The EEOC defines the term "substantially limits" as (i) being unable to perform a major life

activity that the average person in the general population can perform or (ii) being significantly

restricted as to the condition, manner, or duration under which an individual can perform a

particular major life activity as compared to the average member of the general population."  *See*

29 C.F.R. § 1630.2(j).  The following factors are to be considered in determining whether an

individual is substantially limited in performing a major life activity: (1) the nature and severity

of the impairment; (2) the duration or expected duration of the impairment; and (3) the

permanent or long term impact of the impairment.  *Id.*

The Complaint devotes one sentence to Brown's alleged disability, stating: "Plaintiff

suffers from and was diagnosed with [ADHD] which adversely affects her ability to remember

sort (sic) term and to concentrate on one task at a time."  (Compl. ¶ 73.)  This statement does not

provide the Court with any facts from which to judge the severity of Brown's ADHD, the date of

her diagnosis, the prognostication for management of her ADHD, or the impact of her ADHD on

her teaching abilities or other "major life activities."  The Supreme Court has emphasized that

the terms "substantial limitation" should be interpreted strictly to "create a demanding standard

for qualifying as disabled." *Toyota Motor Mfg. Ky.*, 534 U.S. at 195.  A court's focus must center on the effect of the impairment on the life of the individual; merely concluding that a diagnosis exists is insufficient.  *Sutton v. United Air Lines, Inc.*, 537 U.S. 471 (1999).

Federal courts have not uniformly held that ADHD substantially limits a major life activity, and the Complaint does not allege sufficient facts to allow this Court to do so here.  *See, e.g.*, *DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84 (N.D.N.Y. 1999) (finding plaintiff's ADHD did not constitute a disability because, although it interfered with his performance, it did not substantially limit his ability to work); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506–07 (7th Cir. 1997) (finding that, although ADD qualifies as an impairment under the ADA, plaintiff's ADD did not prevent her from engaging in the major life activity of working); *Price v. Nat'l Bd. of Med. Examiners*, 966 F. Supp. 419, 427 (S.D.W.Va. 1997) (holding that plaintiffs' ADHD did not constitute a disability because they had the ability to learn at least as well as the average person).

The Complaint also fails to allege facts to support the third prong of Brown's ADA claim, *i.e.*, that the decision to terminate Brown was made on account of her disability.  The Complaint states that Brown informed Lechler, her immediate supervisor, of her ADHD and "that her medications for that condition adversely affected her short term memory by making her forgetful and unable to concentrate."  (Compl. ¶ 83.)  The Complaint does not suggest that Brown requested any accommodation based on her disability.  In addition to acting as Brown's immediate supervisor, Lechler was also a member of the SISD Board of Trustees.  (*Id.* ¶ 82.) While the Complaint states that Lechler responded unsympathetically when Brown informed him of her ADHD, it does not suggest what action, if any, Lechler took related to Brown's alleged disability.  The Complaint merely states that "[a]t the time Lechler and the trustees voted to

terminate Plaintiff's contract of employment, these (sic) were apprised of Plaintiff's disability yet considered no lesser sanction than termination." (*Id.* ¶ 85.)  While this language insinuates that Brown's disability should have factored into a lesser sanction, the Complaint does not aver that Brown ever requested a lighter sanction or any other accommodation based on her ADHD. Further, the Complaint fails to allege facts sufficient to demonstrate that any of the adverse employment actions she suffered—reprimands, suspensions, and termination—were taken *on account of* her disability.  There are simply no allegations in the Complaint to support such a conclusion.

Because the Complaint fails to adequately allege that Brown is a qualified individual under the ADA and that Brown suffered retaliatory action on account of her disability, the Court must dismiss Plaintiff's ADA claim against the Sealy ISD Board Defendants.  In addition, Brown's ADA claim against Defendant Kana must also be dismissed because, as Plaintiff concedes in her opposition motion (Doc. No. 43, at 1.), Kana is not an "employer" as defined under the ADA.

## IV.    CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's ADA claim and all claims brought pursuant to §§ 1981 and 1983.  Further, the Court dismisses all claims brought against Defendant Kana.  The Court **DENIES** Defendant's motion solely with respect to Plaintiff's Title VII claim and her parallel claim brought under the TCHRA.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 9th day of May, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE